## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JOSE MARTINEZ**,

       Plaintiff,

    vs.                          No.    **CIV 03-0639 MCA/RLP**

**NEW MEXICO CHILDREN YOUTH
& FAMILIES DEPARTMENT**,
**MARY WARD**, in her individual capacity, and
**CHARLIE GARCIA**, in his individual capacity,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the ***Defendants' Motion to Dismiss and for Summary Judgment*** [Doc. No. 25] filed on April 19, 2004. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the Defendants' motion for the reasons set forth below.

## I.    BACKGROUND

On May 28, 2003, Plaintiff Jose Martinez filed this civil action against Defendants New Mexico Children Youth & Families Department (CYFD), Mary Ward, and Charlie Garcia. Count I of Plaintiff's *Complaint* asserts a claim for gender discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17. Count II of Plaintiff's *Complaint* asserts a claim for age discrimination in violation of the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. §§ 621 to 634.  Plaintiff's *Complaint* contains two counts identified as "Count III":  the first "Count III" asserts a claim under state law for breach of contract, and the second "Count III" asserts a related claim under state law for breach of implied covenant of good faith and fair dealing.  Count IV of Plaintiff's *Complaint* asserts a claim for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Count V of Plaintiff's *Complaint* asserts a claim for "wrongful termination" under state law.  [Doc. No. 1.]

On April 19, 2004, Defendants moved for dismissal and/or summary judgment as to all of Plaintiffs' claims.  [Doc. No. 25.] The undisputed facts and evidence of record relating to Defendants' motion can be summarized as follows.

All of Plaintiff's claims arise from his former employment as a teacher at the New Mexico Boys School in Springer, New Mexico, between August 1998 and June 2001. Defendant CYFD is the state agency that employed Plaintiff during this period.  [Doc. No. 12, at 2.] Defendant Ward was the principal of the Boys School, and Defendant Garcia was the assistant principal of the Boys School during this period.  [Jose Martinez Dep. at 23.]

Plaintiff started working for CYFD as a math and science teacher at the Boys School in August 1998.  He continued working as a math and science teacher at the Boys School during the 1998-1999 and 1999-2000 school years.  In the 2000-2001 school year, he moved to the school's main campus, where he taught science and started a Spanish class during the middle of the school year.  Plaintiff is certified to teach at least one subject and his contract

with Defendant CYFD for the 2000-2001 school year is  a "Certified (Licensed) School Instructor Contract."  [Jose Martinez Dep. at 21-23; Deft. Ex. A to Doc No. 26.]

Plaintiff considered Defendant Ward to be his immediate supervisor during his employment with CYFD between 1998 and 2001 because she was the person who actually hired him and did his evaluations.  Plaintiff believed that he got along "great" with Defendant Ward and that "everything was fine with her" until he received a letter from her dated May 9, 2001, notifying him that the Boys School would not be offering him a contract for the 2001-2002 school year.  [Jose Martinez Dep. at 23-24; Deft. Ex. B to Doc. No. 26.]

Defendant Garcia also had some supervisory duties because he would "take over" when Defendant Ward was absent.  When asked how he got along with Defendant Garcia, Plaintiff answered:  "So, so.  He depended on him, and you know, the day if he thought he was going to pick on you that day, he would pick on you all day long.  He would just holler and scream."  [Jose Martinez Dep. at 53.]

In a memorandum addressed to Defendant Ward and dated March 8, 2001, Plaintiff and seven other teachers at the Boys School stated several concerns about their working conditions at the school.  Some of the teachers listed on that document later stated that they were part of a group of employees that had been singled out for adverse treatment by their employer and labeled "Los Condenados" (meaning "the condemned").  According to some of the teachers, Plaintiff also was part of this group of "Los Condenados."  [Baca Dep. at 7-9; Trujillo Dep. at 4-5; Dorothy Martinez Dep. at 5; Pl. Ex. 6 to Doc. No. 27.]

The group of "Los Condenados" included both men and women of different ages and ethnic backgrounds.  Some of the members of this group remain employed by the Boys School.  Some of them resigned or retired, and at least two (including Plaintiff) were terminated or did not have their contracts renewed.  [Jose Martinez Dep. at 37-45; Cuevas Dep. at 4; Arcangeli Dep. at 6, 14;  Baca Dep. at 4-5, 9; Dorothy Martinez Dep. at 35; Pl. Ex. 6 to Doc. No. 27.]

Plaintiffs' last day of employment at the Boys School was June 30, 2001, which corresponded to the date on which his contract for the 2000-2001 school year expired.  [Deft. Ex. A to Doc No. 26.]  In response to a request from Plaintiff, Defendant Ward issued a letter dated June 29, 2001, listing the following reasons for the nonrenewal of his contract: (1) failure to maintain a binder for "State Standards and Benchmarks" throughout the school year, (2) failure to draft "Education Plans of Care" for several clients, (3) being delinquent in submitting or maintaining lesson plans, and (4) failure to enter grades on a timely basis. Defendant Ward's letter of June 29, 2001, also denied Plaintiff's request for a hearing with regard to the non-renewal of his contract.   [Deft. Ex. C to Doc No. 26.]

Plaintiff contends that the reasons stated in Defendant Ward's letter of June 29, 2001, were not the real reasons why his employment with the Boys School was terminated. According to Plaintiff, the requirements stated in Defendant Ward's letter were not enforced in a consistent or accurate manner, and there were other teachers who fell short of these requirements and retained their employment with the Boys School.  [Jose Martinez Dep. at 42-44, 51-59, 95-97.]

-4-

II.   **ANALYSIS**

A.   **Supplemental Jurisdiction**

Some of the claims asserted in Plaintiff's *Complaint* arise under federal law, while others arise under state law.  As diversity of citizenship is not alleged in this case, Plaintiff's state-law claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Before doing so, however, the Court must consider whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction over the state-law claims.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995).  In this case, the Court concludes that these factors weigh in favor of retaining jurisdiction because Plaintiff's state-law claims are closely intertwined with his federal claims and rely on the same set of facts.  Hence, the Court elects to exercise supplemental jurisdiction over Plaintiff's state-law claims and resolve all of the claims addressed in Defendants' motion in this *Memorandum Opinion and Order*.

B.   **Standard of Review**

Defendants have moved to dismiss Plaintiff's ADEA claim pursuant to Fed. R. Civ. P. 12(b)(1).  In reviewing a challenge to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court notes that Plaintiff bears the burden of proof on this issue, and he "'must allege in his pleading the facts essential to show jurisdiction.'"  Penteco Corp. Ltd. P'ship--

1985A v. Union Gas Sys., Inc., 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  In determining whether Plaintiff has met his burden on this issue, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

Defendant also has moved for summary judgment under Fed. R. Civ. P. 56.  That rule provides that the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. See id. at 248.  Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions).

In this case, the parties have submitted exhibits and deposition testimony that contain hearsay and hearsay within hearsay. In reviewing these materials to determine whether Defendants are entitled to summary judgment, the Court does not consider statements that affiants or deponents attribute to others for the purpose of proving the truth of the matters asserted therein, except for admissions by a party opponent (or agent thereof) which the affiant or deponent witnessed. See Fed. R. Evid. 801(d)(2); Wright-Simmons, 155 F.3d at 1268; Pastran v. K-Mart Corp., 210 F.3d 1201, 1203 n.1 (10th Cir. 2000). The Court does, however, consider statements attributed to third parties for other admissible purposes. In particular, such statements may be considered for the limited purpose of showing their effect

on the listener or the declarant's state of mind.  <u>See</u> <u>Faulkner v. Super Valu Stores, Inc.</u>, 3 F.3d 1419, 1434 (10th Cir. 1993) (effect on the listener); <u>Wright v. Southland Corp.</u>, 187 F.3d 1287, 1304 n.21 (11th Cir. 1999) (declarant's state of mind); <u>Pastran</u>, 210 F.3d at 1203 n.1 (similar).  They also may be considered as verbal acts or operative facts when legal consequences flow from the utterance of the statements.  <u>See generally</u> <u>Echo Acceptance Corp. v. Household Retail Servs., Inc.</u>, 267 F.3d 1068, 1087 (10th Cir. 2001).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 551-52 (1999).

### C.    <u>Plaintiff's Gender Discrimination Claim Under Title VII</u>

Count I of Plaintiff's *Complaint* alleges that Defendants violated Title VII of the Civil Rights Act by terminating his employment based on his gender.  Title VII of the Civil Rights Act "makes it an 'unlawful employment practice for an employer . . . to discriminate against any individual . . . , *because of* such individual's race, color, religion, sex, or national origin.'"  <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 92 (2003) (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).

As an initial matter, the Court notes that Defendants Ward and Garcia are not proper defendants with respect to Plaintiff's claims under Title VII because this statute does not impose liability on individual employees. See Haynes v. Williams, 88 F.3d 898, 901 (10th Cir. 1996). Plaintiff concedes this point in his response to Defendants' motion. [Doc. No. 27, at 5.] Therefore, Defendants Ward and Garcia are entitled to summary judgment on this claim.[1]

As to Defendant CYFD, Plaintiff may prove his gender discrimination claim by direct evidence or circumstantial evidence. See Desert Palace, Inc., 539 U.S. at 99-100; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). To the extent that Plaintiff relies on circumstantial evidence, the Court applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), except that "in lieu of showing that he belongs to a protected group," Plaintiff must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992). Apart from the McDonnell Douglas framework, Plaintiff may also establish a *prima facie* case of gender discrimination by means of "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but

---

[1]To the extent that the law permits Plaintiff to bring claims against Defendants Ward or Garcia individually, they are entitled to summary judgment on those claims for the same reasons articulated elsewhere in this *Memorandum Opinion and Order* with respect to Defendant CYFD.

for the plaintiff's status the challenged employment decision would have favored the plaintiff." Id. at 590.

In response to Defendants' summary-judgment motion in this case, Plaintiff acknowledges that there were at least two women in the group of employees allegedly targeted as "Los Condenados," and that "the discrimination may have been more retaliatory and age-based rather than purely gender-based."[2] [Doc. No. 27, at 5.] Plaintiff presents no additional authority or argument in support of his gender discrimination claim, and the undisputed facts and evidence of record do not support a reasonable inference of gender discrimination under the standard articulated in Notari, 971 F.2d at 589-90; cf. Adler, 144 F.3d at 672 ("[T]he requirement that the nonmovant specifically reference facts in its motion materials and the record is of special importance in an employment discrimination case."); Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."). For these reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' claim for gender discrimination under Title VII of the Civil Rights Act.

---

[2]The Court notes that Plaintiff's own deposition testimony and the documents attached to Plaintiff's response brief show that three of the eight teachers listed on the memorandum addressed to Defendant Ward were women, namely Carol Cuevas, Leslie Simmons, and Dorothy Martinez. [Jose Martinez Dep. at 37-44; Ex. A to Doc No. 27.]

#### D.   **Plaintiff's Age Discrimination Claim under the ADEA**

Defendants also challenge Plaintiff's age discrimination claim under the ADEA.  In particular, Defendants assert that the ADEA does not abrogate Defendant CYFD's sovereign immunity under the Eleventh Amendment to the United States Constitution and that the ADEA does not impose liability on individual employees.  See Kimmel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (addressing Eleventh Amendment immunity); Ledbetter v. City of Topeka, 112 F. Supp. 2d 1239, 1244 (D. Kan. 2000) (addressing liability of individual employees).  Plaintiff concedes that the ADEA does not impose liability on individual employees [Doc. No. 27, at 5.], and therefore Defendants Ward and Garcia are entitled to the dismissal of Plaintiff's ADEA claim on that basis alone.

Plaintiff asserts, however, that Defendant CYFD has waived its Eleventh Amendment immunity in this instance.  To support this assertion, Plaintiff relies on a provision in the New Mexico Tort Claims Act (NMTCA) which states that the provisions of that statute "shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship." N.M. Stat. Ann. § 41-4-21 (Michie 1978 & Supp. 1996).

Contrary to Plaintiff's assertions, the New Mexico Court of Appeals has held that Section 41-4-21 of the NMTCA does not provide a waiver of sovereign immunity.  See Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 448, 744 P.2d 919, 921 (Ct. App. 1987). "Read in context, it simply means that if a waiver of immunity exists that would entitle an injured party to bring a claim, the Tort Claims Act shall not affect personnel acts, rules or

-11-

regulations, or other provisions of law governing the employer-employee relationship." Id.

In this case, a waiver of Eleventh Amendment immunity does not exist because Section 41-4-18(A) of the NMTCA provides that exclusive original jurisdiction over claims brought under that statute "shall be in the district courts of New Mexico," and Section 41-4-4(F) provides that "[n]othing in Subsections B, C, and D of this section shall be construed . . . as a waiver of the state's immunity from suit in federal court under the eleventh amendment to the United States Constitution." N.M. Stat. Ann. §§ 41-4-4(F), 41-4-18(A) (Michie 1978 & Supp. 1996). In light of these statutory provisions, the Tenth Circuit has held that the NMTCA does not waive the State's Eleventh Amendment immunity from suit in a federal court. See Bishop v. Doe, 902 F.2d 809, 810 (10th Cir. 1990); Korgich v. Regents of N.M. Sch. of Mines, 582 F.2d 549, 551-52 (10th Cir. 1978); cf. Ward v. Presbyterian Healthcare Servs., 72 F. Supp. 2d 1285, 1293 (D.N.M. 1999) (collecting cases).

These authorities compel the conclusion that the State's Eleventh Amendment immunity bars this Court from exercising jurisdiction over Plaintiff's ADEA claim. In addition, Plaintiff's response to Defendants' motion presents no argument or authority to support his claim that his employment was terminated because of his age in violation of the ADEA. Therefore, this claim must be dismissed. See Adler, 144 F.3d at 672; Tran v. Trs. of the States Colleges, 355 F.3d 1263, 1266 (10th Cir. 2004).

E.      **Plaintiff's Breach of Contract Claims**

Plaintiff's *Complaint* also asserts claims under state law for breach of contract and breach of an implied covenant of good faith and fair dealing. In particular, Plaintiff's

*Complaint* alleges that Defendants committed these breaches by discriminating against him on the basis of his gender and his age.

In their brief in support of their motion, Defendants assert that these claims must fail for the following reasons. First, Plaintiff has failed to show any contractual relationship between himself and Defendants Ward and Garcia that could support a claim for breach of contract or breach of an implied covenant of good faith and fair dealing. Plaintiff concedes this point [Doc. No. 27, at 5], and therefore Defendants Ward and Garcia are entitled to summary judgment on Plaintiff's contract claims.

Second, Defendants assert that there is no specific provision in Plaintiff's employment contract regarding discrimination on the basis of age or gender. [Jose Martinez Dep. at 59.] To the extent that Plaintiff relies on a generalized oral policy statement to the effect that Defendant CYFD would provide a "workplace free from discrimination, harassment, hostility and retaliation," Defendants assert that such a statement is of a non-promissory nature and cannot support a claim for breach of contract or breach of an implied covenant of good faith and fair dealing. See Trujillo v. Gonzales, 106 N.M. 620, 621-22, 747 P.2d 915, 916-17 (1987) (interpreting statute granting immunity in the absence of a "valid written contract"); Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987) (noting that language of a non-promissory nature in an employee handbook did not give rise to an implied contract).

Plaintiff's response to Defendants' motion for summary judgment does not specifically address the claims in his *Complaint* based on alleged contractual provisions

prohibiting "discrimination, harassment, hostility and retaliation." Therefore, such claims are deemed abandoned. See Adler, 144 F.3d at 672; Tran, 355 F.3d at 1266.

Instead of providing support for the contract claims previously asserted in his *Complaint*, Plaintiff's response to Defendants' summary-judgment motion presents an entirely new claim that Defendant CYFD breached a different provision of his employment contract by failing to provide him with a hearing and a showing of just cause under the School Personnel Act, N.M. Stat. Ann. §§ 22-10-1 to 22-10-27 (Michie 1978 & Supp. 2001) (prior to 2003 amendment). The Court notes that this new claim based on the School Personnel Act does not appear anywhere in Plaintiff's *Complaint* and that Plaintiff never filed a timely motion to amend his *Complaint* to add such a claim.

Under similar circumstances, the Tenth Circuit has declined to treat a new claim raised for the first time in a plaintiff's response brief as an amendment of the complaint. See Green Country Food Market, Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279-81 (10th Cir. 2004); Evans v. McDonald's Corp., 936 F.2d 1087, 1091 (10th Cir. 1991). "The liberalized pleading rules . . . do not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case." Green Country Food Market, Inc., 371 F.3d at 1279; accord Evans, 936 F.2d at 1091. More generally, it is within the Court's discretion to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

-14-

amendment." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>accord</u> <u>Hom v. Squire</u>, 81 F.3d 969, 973 (10th Cir. 1996).  A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." <u>Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.</u>, 175 F.3d 848, 859 (10th Cir. 1999).

In this case, allowing an amendment of Plaintiff's *Complaint* to add these new claims at this juncture would be unduly prejudicial to Defendants because they had no notice of these claims until after the close of discovery [Doc. No. 20, 24] and the expiration of the dispositive motions deadline set forth in the Initial Pretrial Report [Doc. No. 12].  Thus, Defendants were deprived of a fair opportunity to develop the facts and legal argument necessary to defend against these new claims.  These reasons alone provide a sufficient basis for granting summary judgment on Plaintiff's contract claims and denying permission to amend Plaintiff's *Complaint* to add any new contract claims at this late stage of the litigation.

In the alternative, an amendment of Plaintiff's *Complaint* to add a contract claim based on the School Personnel Act is not warranted at this time because, in addition to being untimely and prejudicial, it would also be futile as a matter of law.  To the extent that the Court is required to consider the merits of Plaintiff's new contract claim on the basis of the existing record, the Court concludes that Defendants are entitled to summary judgment on this claim for the following reasons.

The School Personnel Act (as it existed during the 2000-2001 school year) provides, in relevant part, that "a person employed by contract pursuant to this section has no legitimate objective expectancy of reemployment, and no contract entered into pursuant to

this section shall be construed as an implied promise of continued employment pursuant to a subsequent contract."   N.M. Stat. Ann. § 22-10-11(E); see Naranjo v. Bd. of Educ. of Espanola Pub. Schs., 119 N.M. 401, 403-405, 891 P.2d 542, 544-46 (1995) (concluding that Section 22-10-11(E) expresses "the legislature's clear intent" to eliminate expectations of continued employment beyond the duration of an existing contract).  Section 22-10-12 of the Act provides a narrow exception to this rule under which "[f]ailure of the . . . governing authority of the state agency to serve a written notice of reemployment or termination on a certified school instructor shall be construed to mean that the notice of reemployment has been served upon the person for the ensuing school year."  N.M. Stat. Ann. § 22-10-12.

This exception does not apply here because it is undisputed that Plaintiff was served with a written notice of termination before the last day of the 2000-2001 school year. Therefore, Plaintiff's employment contract for the 2000-2001 school year does not contain any implied promise of continued employment in the ensuing school year which could provide the basis for a breach-of-contract claim in this case.

The School Personnel Act further provides that a "governing authority of a state agency may terminate an employee with fewer than three years of consecutive service for any reason it deems sufficient."  N.M. Stat. Ann. § 22-10-14(A).  The requirement of "just cause" for termination, and the opportunity for an informal hearing before the governing authority regarding such termination, only apply in the case of "an employee who *has been employed* by a school district or state agency for three consecutive years."  Id. §§ 22-10-14(C), (D) (emphasis added).

In this case, it is undisputed that Plaintiff had not been employed by the Boys School for three consecutive years at the time he received the written notice of termination pursuant to Section 22-10-12.  Thus, this case is distinguishable from Franco v. Carlsbad Mun. Schs., 2001-NMCA-042, ¶¶ 4, 8, 130 N.M. 543, 28 P.3d 531, which involved a tenured, non-certified school employee who had more than three consecutive years of employment at the time his employment ended.

Nevertheless, Plaintiff asserts that he is entitled to be treated as a person who had three consecutive years of employment because, after receiving his notice of termination, he was allowed to complete his contract for the 2000-2001 school year and remain at the school until the end of June 2001.  It is undisputed that the 2000-2001 school year was Plaintiff's third consecutive year of employment at the Boys School.  Thus, the merits' of Plaintiff's argument turn on whether the phrase "three consecutive years," as used in Section 22-10-14 of the School Personnel Act, is to be measured from the date the employer makes the decision to terminate an employee and serves that employee with written notice of termination pursuant to Section 22-10-12, or the date on which the employee completes his last day of work under an existing contract, i.e., the end of the current school year.

In this case, the Court concludes that the requirement of "three consecutive years" is to be measured from the date on which the governing authority made its decision not to renew Plaintiff's contract and served him with written notice pursuant to Section 22-10-12.  This conclusion follows from the plain language of the School Personnel Act and the interpretation of that statute set forth by the New Mexico Supreme Court.

-17-

There is no question that Plaintiff's employment was "terminated" within the meaning of Section 22-10-12 of the School Personnel Act, which states that "[a] notice of termination shall be a notice of intention not to reemploy for the ensuing school year."  N.M. Stat. Ann. § 22-10-12.  The "definitions" section of the School Personnel Act distinguishes the word "terminate" from the word "discharge" in this context, and the New Mexico Supreme Court has explained this distinction as follows:  "'Discharge' is defined in Section 22-10-2(A) as 'the act of severing the employment relationship with an employee prior to the expiration of the current employment contract[.]'  'Terminate,' on the other hand, is defined in Subsection D of the same statute as 'the act of not reemploying an employee for the ensuing school year[.]'"  Swinney v. Deming Bd. of Educ., 117 N.M. 492, 494, 873 P.2d 238, 240 (1994).  Because Plaintiff was "terminated" rather than "discharged," the procedures specified in Section 22-10-21, including the opportunity to correct unsatisfactory work performance, do not apply here.  See id.

Instead, Section 22-10-14 of the School Personnel Act provides the appropriate framework for determining the procedures applicable to the termination of Plaintiff's employment in this case.  Section 22-10-14(C) states, in relevant part, that:

> An employee who *has been employed* by a . . . state agency for three consecutive years and who *receives* a notice of termination pursuant to either Section 22-10-12 NMSA 1978 or this section, may request an opportunity to make a statement to the . . . governing authority on the decision to terminate him by submitting a written request to the . . . administrator within five working days from the date written notice of termination is served upon him.

-18-

N.M. Stat. Ann. § 22-10-14(C) (emphasis added). This provision of the statute does *not* guarantee an opportunity for a hearing to an employee who *will be employed* by a state agency for more than three years or who *has received* a notice of termination and later decides to challenge that termination more than five working days after receipt of such notice (*e.g.*, after an existing employment contract has expired). Rather, the employee in question must *have been employed* for three consecutive years at the time he or she *receives* the notice of termination *and* submits a timely written request within the required five-day period in order to qualify for a hearing under this statute.

Further, the New Mexico Supreme Court has stated that the meaning of the word "terminate" in this statute is to be given a broad interpretation that accords with the legislature's clear intent to eliminate expectations of continued employment beyond the duration of an existing contract. See Naranjo, 119 N.M. at 405, 891 P.2d at 546; N.M. Stat. Ann. § 22-10-11(E). Under this interpretation of the statute, a school board or governing authority is not required to "utter its ruling in specific words, when the meaning of its action is clear." Id. Thus, the Naranjo Court determined that a school board "effectively terminated" employees by "declaring the jobs vacant." Id. Such action was legally sufficient to constitute a "termination" under the statute because the employees "could reasonably infer from the School Board's action that they were not to be reemployed for the next school year," and the School Board's director of personnel had issued a letter which made them "aware that their contracts would not be renewed." Id.

Similarly, Plaintiff's employment was "effectively terminated" within the meaning of the  School Personnel Act when Defendant Ward issued her letter of May 9, 2001, informing him that his contract would not be renewed for the following year.  As of that date, he had not yet completed three consecutive years of employment with the Boys School, and therefore he did not have the contractual right to a hearing or a showing of "just cause" under the School Personnel Act.

Finally, even if the requirement of "just cause" and the opportunity for a hearing applied to Plaintiff's termination, his response to Defendants' motion fails to provide evidence which would support a reasonable inference that just cause was lacking or that he followed all the procedures necessary to obtain a hearing in this case.  The stated reasons for the termination of Plaintiff's employment are rationally related to his performance of the duties of certified school personnel set forth in Section 22-10-5 of the School Personnel Act, and, as noted elsewhere in this *Memorandum Opinion and Order*, Plaintiff has failed to come forward with admissible evidence which would support a reasonable inference that his civil or constitutional rights were violated.

Further, a school employee's right to an informal hearing under Section 22-10-14(C) is not automatic.  As noted above, the employee must submit a written request for a hearing within five working days of receiving the notice of termination.  See § 22-10-14(C).  The employee also must  respond within ten working days to his employer's written reasons for the termination by "submitting in writing to the local superintendent or administrator a contention that the decision to terminate him was made without just cause."  N.M. Stat. Ann.

§ 22-10-14(E).   Such "written contention shall specify the grounds upon which it is contended that the decision was without just cause and shall include a statement of the facts that the employee believes support his contention."   Id.   Although the record shows that Defendants provided Plaintiff with a written notice of termination and a written statement of the reasons for the termination of his employment [Deft. Ex. B, C to Doc No. 26], Plaintiff has not shown that he complied with Section 22-10-14(C) and (E) by submitting a written request for a hearing within five working days of service of the notice of termination or providing Defendants with a written contention challenging his termination within the required ten-day period.   For all of the above reasons, Defendants are entitled to summary judgment on Plaintiff's claims for breach of contract and breach of an implied covenant of good faith and fair dealing, and there are no grounds for permitting an amendment of Plaintiff's *Complaint* to add new contract claims at this juncture.

### F.   Plaintiff's Constitutional Claims

#### 1.   Equal Protection

Count IV of Plaintiff's *Complaint* alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by terminating his employment in an irrational and wholly arbitrary manner while retaining other similarly situated employees. Defendants' brief in support of their motion for summary judgment points to a lack of evidence to support such a claim and asserts the affirmative defense of qualified immunity on behalf of the individual Defendants.

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish that the defendant's actions violated a constitutional or statutory right and that the right at issue was clearly established at the time of the defendant's unlawful conduct.  See Medina v. Cram, 252 F.3d 1124, 1128-29 (10th Cir. 2001); Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001).  If the plaintiff fails to meet this burden, then the Court must grant the defendant qualified immunity.  See Gross, 245 F.3d at 1156.

In his response to Defendants' motion, Plaintiff provides no specific argument or authority in support of an equal protection claim.  Therefore, Plaintiff's equal protection claim is deemed abandoned.  See Adler, 144 F.3d at 672; Tran, 355 F.3d at 1266.  With respect to the individual Defendants who raise the defense of qualified immunity, summary judgment also is appropriate because Plaintiff has failed to meet his burden of establishing that these Defendants' actions violated his constitutional right to equal protection and that the right at issue was clearly established at the time of the allegedly unlawful conduct.  See Gross, 245 F.3d at 1156.

## 2.    Amendment of the Complaint

Instead of briefing the equal protection claims asserted in his *Complaint*, Plaintiff's response to Defendants' summary-judgment motion asserts entirely new constitutional claims for violation of the Due Process Clause of the Fourteenth Amendment and retaliation in violation of the First Amendment.  These new claims based on the First Amendment and the

Due Process Clause do not appear anywhere in Plaintiff's *Complaint*, and Plaintiff never filed a timely motion to amend his *Complaint* to add such new claims.

In his response brief, Plaintiff claims that he did not plead a First Amendment claim earlier because the evidence in support of such a claim did not become clear to him until after the depositions of the witnesses were taken. [Doc. No. 27, at 8.] The Court notes, however, that the deponents in question were listed as Plaintiff's witnesses in the Initial Pretrial Report filed well before their depositions were taken [Doc. No. 12, at 6-7], and in any event the record reflects that the depositions were completed well before the filing of Defendants' summary-judgment motion and the expiration of the dispositive motions deadline. [Doc. No. 12, 25.] The record also reflects that the delay in completing the depositions was attributable to Plaintiff's counsel. [Doc. No. 19, 23.] Thus, Plaintiff's response brief fails to explain why the issue of adding a First Amendment claim could not have been anticipated and raised on the record in a more timely manner.

In light of these facts, the Court concludes that permitting Plaintiff to amend his *Complaint* in order to add new constitutional claims is not warranted at this time for essentially the same reasons articulated in the preceding discussion of Plaintiff's contract claims. Adding these claims to the litigation at this juncture would be untimely and unduly prejudicial to Defendants because Defendants had no notice of these new claims until after the close of discovery and the expiration of the dispositive motions deadline specified in the Initial Pretrial Report.

The Court also notes that identification of the specific constitutional provisions at issue is critical to a complaint brought under 42 U.S.C. § 1983 because that statute is not an independent source of substantive rights, but rather a mechanism for enforcing federal rights conferred elsewhere. Thus, the analysis of any claim brought under 42 U.S.C. § 1983 necessarily begins by identifying the specific constitutional right which Defendants are alleged to have violated. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Reno v. Flores, 507 U.S. 292, 302 (1993). Absent such specific identification of the constitutional right at issue in a party's pleading, a claim under 42 U.S.C. § 1983 fails as a matter of law, and Defendants cannot reasonably be expected to defend against such an unspecified claim. The reasons articulated above provide sufficient grounds for granting summary judgment on Plaintiff's constitutional claims and denying permission to amend the *Complaint* to add new constitutional claims at this late stage of the litigation. See Green Country Food Market, Inc., 371 F.3d at 1279; accord Evans, 936 F.2d at 1091.

In the alternative, Plaintiff's belated attempt to add new constitutional claims to his *Complaint* must be denied because, in addition to being untimely and unduly prejudicial at this juncture, they are also futile as a matter of law. To the extent that the Court is required to consider the merits of Plaintiff's new constitutional claims on the basis of the existing record, the Court concludes that Defendants are entitled to summary judgment on these claims for the reasons set forth below.

3.    **Due Process**

The Court concludes that Plaintiff's due-process claim lacks merit because, as an employee with less than three consecutive years of employment at the time of his termination, Plaintiff has no constitutionally protected property interest in continued employment beyond the 2000-2001 school year. The property interests protected by the Due Process Clause are created and defined by existing rules or understandings that stem from independent sources such as state law. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). As noted earlier, the School Personnel Act (as it existed during the 2000-2001 school year) provided, in relevant part, that "a person employed by contract pursuant to this section has no legitimate objective expectancy of reemployment, and no contract entered into pursuant to this section shall be construed as an implied promise of continued employment pursuant to a subsequent contract." N.M. Stat. Ann. § 22-10-11(E); see Naranjo, 119 N.M. 401, 403-405, 891 P.2d 542, 544-46 (1995) (concluding that Section 22-10-11(E) expresses "the legislature's clear intent" to eliminate expectations of continued employment beyond the duration of an existing contract). Thus, as an employee with less than three consecutive years of employment at the time of service of the notice of termination, Plaintiff did not have a legitimate expectation of continued employment beyond the 2000-2001 school year, and the Due Process Clause did not require the Defendants in this case to provide Plaintiff with a hearing. See Roth, 408 U.S. at 578.

To the extent that any process was due, the written statement of the reasons for Plaintiff's termination that were provided to him by his employer was sufficient to satisfy

the balancing test articulated in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).  To the

extent this balancing test is applicable here, the Court notes that the facts alleged in this case

are distinguishable from <u>Franco</u>, 2001-NMCA-042, ¶¶ 4-8, 130 N.M. 543, 28 P.3d 531.

Unlike the Plaintiff in this case, Mr. Franco was a functionally illiterate school custodian

who clearly did not understand the significance of the written information that was provided

to him, and the grounds asserted for the termination of Mr. Franco's employment were more

stigmatizing because they involved inappropriate comments of a sexual nature directed at

summer youth employees.  <u>See</u> <u>id.</u>

### 4.    <u>First Amendment Retaliation</u>

The Court also concludes that Plaintiff's First Amendment retaliation claim lacks

merit.  To evaluate this claim, the Court employs a four-part balancing test for determining

whether a public employer's actions impermissibly infringe on free speech rights of

employees.  <u>See</u> <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968).  Under this test, the Court

first must decide whether the speech at issue touches on a matter of public concern.  If it

does, the Court must balance the interest of the employee in making the statement against

the employer's interest in promoting the efficiency of the public services it performs through

its employees.  If these prerequisites are met, then the speech is protected, and the Court next

considers whether the employee has shown that his expression was a motivating factor in the

detrimental employment decision. Finally, even if the employee sustains this burden, the

employer can still prevail if it shows by a preponderance of the evidence that it would have

made the same decision regardless of the protected speech.  See id. at 568; Schalk v. Gallemore, 906 F.2d 491, 494-95 (10th Cir.1990).

In this case, Plaintiff contends that the contents of the memorandum addressed to Defendant Ward and dated March 8, 2001, constitutes "protected speech" under the standard articulated above.  [Pl. Ex. 6 to Doc No. 27.]  The Court disagrees.

The Tenth Circuit has held that "speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." David v. City and County of Denver, 101 F.3d 1344, 1355 (10th Cir.1996).  In this regard, the Court "'will consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen].'"  Id. (quoting Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994)).

Applying this test, the Court concludes that the memorandum in question relates to internal personnel disputes and working conditions.  For example, the memorandum raises concerns about being summoned to the Education Director's office, granting privileges such as "comp time" and leave to attend conferences, requiring the staff to follow the dress code, and enforcement of rules pertaining to the staff such as turning in keys.  While the memorandum also raises some concerns that indirectly touch upon the welfare of students (such as grading policies and removal of students from the classroom), the overall context and tone of the memorandum indicate that it is calculated to redress personal grievances which were specific to the teachers listed therein.

-27-

In this regard, the deposition testimony of the teachers involved in preparing the memorandum indicates that they were simply a group that "used to have lunch together" [Arcangeli Dep. at 5, 7-8] or that happened to meet in the graphic-arts instructor's room while the education building was being remodeled because "we didn't have a place to go." [Jose Martinez Dep. at 37-38.] Plaintiff has not alleged or presented evidence that this group was formed or convened as a citizens' group for a specific public purpose or in response to a broader public debate about the operation of the Boys School or the welfare of its students.

To the extent that some portion of the memorandum to Defendant Ward touches on a matter of public concern and is therefore considered protected speech, the Court concludes that Defendants are entitled to summary judgment because the evidence of record does not support a reasonable inference that Plaintiff's protected speech was a motivating factor in the decision to terminate his employment.[3]  To prevail on a First Amendment retaliation claim, Plaintiff must prove more than the mere fact that he signed a memorandum listing "educational concerns" two months before he was notified that his contract would not be renewed for the ensuing school year.  See Bd. of  County Comm'rs v. Umbehr, 518 U.S. 668, 685 (1996).   Rather, he must show that his protected speech "was a substantial and

---

[3]With respect to the second part of the Pickering balancing test, the Court notes that due to the fact that Plaintiff did not raise his First Amendment retaliation claim in a timely manner, Defendants were never afforded a fair opportunity to conduct discovery or develop the record as to whether the memorandum of March 8, 2001, "'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" Finn, 249 F.3d at 1249 (quoting Rankin v. McPherson, 483 U.S. 378, 388 (1987)).  For this reason, the Court draws no conclusions regarding this part of the balancing test.

motivating factor" in the decision to terminate his employment in that manner.  Id. at 675; accord Burns v. Bd. of County Comm'rs, 330 F.3d 1285, 1287 (10th Cir. 2003).

The only legal authority that Plaintiff cites in support of his First Amendment retaliation claim is Finn v. State of N.M., 249 F.3d 1241 (10th Cir. 2001).  The facts in Finn are clearly distinguishable from the case at bar, however, because in that case the employer specifically cited the memoranda or "Intra-Department Correspondence" circulated by Mr. Finn as the reason for terminating his employment.  See id. at 1246.  Indeed, the Tenth Circuit did not even address the third or fourth parts of the Pickering balancing test in Finn because the State conceded that Mr. Finn's termination was based on his speech.  See id. at 1247 n.1.  In contrast, Defendant Ward's stated reasons for the termination of Plaintiff's employment in the case at bar [Deft. Ex. B, C to Doc No. 26] do not mention the memorandum of March 8, 2001, that was addressed to Defendant Ward or any of the concerns expressed therein.  Additionally, Plaintiff admitted in his deposition that he thought he got along "great" with Defendant Ward and that he thought "everything was fine with her" until he received his notice of termination on May 9, 2001.  [Jose Martinez Dep. at 23-24.] There is no mention of the March 2001 memorandum in Plaintiff's characterization of his relationship with Defendant Ward prior to that date.

Instead, Plaintiff relies on inferences to be drawn from the deposition testimony of other teachers concerning Plaintiff's involvement with the group called "Los Condenados" and his participation in the memorandum to Defendant Ward.  This evidence is too vague to establish a nexus with the decision to terminate Plaintiff's employment.  See Hullman v. Bd.

of Trustees of Pratt Cmty. Coll., 950 F.2d 665, 668 (10th Cir. 1991).  The other teachers involved in that group rely on hearsay generated after the fact rather than personal knowledge to support their belief that the termination of Plaintiff's employment was related in some way to the memorandum they sent to Defendant Ward in March 2001.  Further, Plaintiff identifies only one other teacher associated with that memorandum who allegedly was terminated or did not have his contract renewed.  The rest of that group either remained at the school, resigned, or retired.  [Baca Dep. at 4-5; Cuevas Dep. at 4;  Arcangeli Dep. at 3; Trujillo Dep. at 3; Dorothy Martinez Dep. at 35; Pl. Ex. 6.]  Plaintiff has not shown that the percentage of terminations among the staff listed on the memorandum to Defendant Ward was any greater than the percentage of terminations among the Boys School staff as a whole.

At best, Defendants' alleged omissions and oversights with respect to applying the standards for lesson plans and grading in a consistent and accurate manner amount to "simple negligence, which cannot form the basis for a First Amendment claim."  Wulf v. City of Wichita, 883 F.2d 842, 863 (10th Cir. 1989).  Further, alleged violations of a state law or the policies and procedures of state agency cannot, standing alone, form the basis for a claim under 42 U.S.C. § 1983.  See Jones v. City & County of Denver, 854 F.2d 1206, 1209 (10th Cir.1988).  Accordingly, the evidence presented by Plaintiff does not support a reasonable inference of retaliation in violation of the First Amendment.

G.     **Plaintiff's Wrongful Termination Claim**

Count V of Plaintiff's *Complaint* asserts a claim under state law for "wrongful termination."  In particular, Plaintiff's *Complaint* asserts that he was terminated in violation

of public policy due to the fact that he was treated differently than other employees because of his gender and age.

In their motion for summary judgment, Defendants assert that New Mexico law does not recognize a common-law tort action for "wrongful termination."  Rather, Defendants assert that, in the context of at-will employment, New Mexico law only recognizes a cause of action for "retaliatory discharge," under which at-will employees must prove that "they were discharged because they performed acts that public policy has authorized or would encourage, or because they refused to do something required by an employer that public policy would condemn."  Garrity v. Overland Sheepskin Co. of Taos, 1996-NMSC-032, ¶ 15, 121 N.M. 710, 917 P.2d 1382.  At-will employees also "must show a causal connection between their actions and their subsequent discharge" in order to prevail on a theory of retaliatory discharge.  Id.

Defendants further contend that Plaintiff cannot prevail on such a claim in this instance because (1) it is barred by sovereign immunity, (2) Plaintiff did not provide notice of such a claim as required under the NMTCA, (3) Plaintiff was not an at-will employee and was never "discharged" within the meaning of this cause of action, (4) Plaintiff's *Complaint* fails to allege that he engaged in conduct encouraged by New Mexico public policy or that he was the subject of retaliation for engaging in such conduct, and (5) Defendants' decision not to renew Plaintiff's contract for the ensuing school year does not violate New Mexico public policy.  [Doc. No. 25, at 15-17.]

In response to Defendant's motion, Plaintiff abandons the "wrongful termination" claim previously asserted in his *Complaint* and again asserts an entirely new claim based on the theory of "retaliatory discharge."   Rather than relying on age or gender discrimination as the violation of public policy on which such a claim is premised, Plaintiff's response brief asserts for the first time that his participation in the memorandum addressed to Defendant Ward in March 2001 amounted to conduct encouraged by New Mexico public policy and that Defendants retaliated against him for engaging in that conduct.  [Doc. No. 27, at 8-9.]

For the reasons stated earlier in the discussion of Plaintiff's contract claims and his constitutional claims, the Court concludes that an amendment of Plaintiff's *Complaint* to assert a new claim for retaliatory discharge at this late stage of the litigation is not warranted because it is untimely and unduly prejudicial.  See Green Country Food Market, Inc., 371 F.3d at 1279; accord Evans, 936 F.2d at 1091.  In this regard, the Court notes that Plaintiff's retaliatory discharge claim parallels his newly asserted First Amendment retaliation claim, and like the latter claim, the former claim involves issues on which Defendants were not afforded a fair opportunity to develop a record prior to the close of discovery and the expiration of the dispositive motions deadline set forth in the Initial Pretrial Report.

In the alternative, to the extent that this Court is required to address the merits of Plaintiff's newly asserted theory of retaliatory discharge, the Court determines that Defendant is entitled to summary judgment on that theory.  For the reasons stated previously, Section 41-4-21 of the NMTCA does not provide a waiver of sovereign immunity for the tort of retaliatory discharge, see Rubio, 106 N.M. at 448, 744 P.2d at 921, and in any event the

record does not reflect that Plaintiff ever provided Defendants with the notice necessary to proceed with this tort claim under the NMTCA.  <u>See</u> N.M. Stat. Ann. § 41-4-16 (Michie 1978 & Supp. 1996).  Further, the tort of retaliatory discharge is inapposite in this case because Plaintiff has failed to show the required nexus or causal connection between his participation in the memorandum to Defendant Ward in March 2001 and the notice of termination he received in May 2001.  <u>See</u> <u>Garrity</u>, 1996-NMSC-032, ¶ 15, 121 N.M. 710, 917 P.2d 1382.  For these reasons, Defendants are entitled to summary judgment on Plaintiff's claim of "wrongful termination" (a/k/a "retaliatory discharge").

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that (1) Plaintiff's ADEA claim must be dismissed without prejudice for lack of subject-matter jurisdiction based on Eleventh Amendment immunity, (2) Plaintiff is not permitted to amend his *Complaint* to add new claims raised for the first time in his response to Defendant's summary-judgment motion, and (3) Defendants are entitled to summary judgment as to all remaining claims based on the undisputed facts and evidence of record.

**IT IS, THEREFORE, ORDERED** that the ***Defendants' Motion to Dismiss and for Summary Judgment*** [Doc. No. 24] is **GRANTED**.

**IT IS FURTHER ORDERED** that Count II of Plaintiff's *Complaint* (the ADEA claim) is **DISMISSED WITHOUT PREJUDICE** based on a lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** all other counts of Plaintiff's *Complaint* are

**DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 30th day of July, 2004, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
United States District Judge